**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.  1:26-cr-01769-CJC** |
| **JUREL BOWMAN,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America respectfully requests that the defendant, Jurel Bowman, should remain detained pending trial pursuant to 18 U.S.C. § 3142.

The defendant has, for at least five years, targeted at least one child and teenagers in his southern Maryland community in and around Lusby, Maryland and over the Internet to (a) coerce and entice them to produce child pornography for his sexual gratification; (b) engage in sex trafficking by producing child pornography or engaging in sex acts with him for money; and (c) recruit others to sell child pornography or engage in sexual acts with him for money.  The youngest known potential victim self-identified as just 12 years old.  The defendant did so while working in a trusted position in the community as an EMT.  When, in 2022, the defendant was first investigated by Calvert County Sheriff's Office for his interactions with Minor Victim 4, the defendant was suspended from his position with Solomons Volunteer Rescue Squad Fire Department.  Yet that prior investigation did not deter the defendant from continuing to pay minors to produce child pornography from 2022 through 2026.

When the defendant met Minor Victim 1, he was also in a position of trust as her youth group leader.  Later, while he was exploiting her in 2025, the defendant asked Minor Victim 1 if

she was interested in him when he was working in the technology booth at church.  Minor Victim 1 was 15 years old at that time.

At the time of his instant arrest the defendant was working over two hours away at a Harford County fire station rather than at the Solomon, Maryland location five minutes from his and his mother's address in Lusby, Maryland.  The defendant was surveilled living out of the fire station and stated to Minor Victim 1 multiple times that he lived in the Baltimore area and not in Lusby, Maryland anymore.

The defendant also knew that these minors were in desperate financial straits or had no money to pay for things they wanted, and he intentionally exploited their wants and needs for his own sexual gratification.

The defendant also never took no for an answer, hounding his victims over months and years even after they had blocked him on social media and their phones.  By way of example, Minor Victim 1 reported that the defendant used a second Snapchat account and two additional phone numbers to reach out to her as recently as April 1, 2026, the same day that she reported his conduct to the FBI.  Minor Victim 1 attempted to cut contact with the defendant in November 2025.  A review of the defendant's alternate Snapchat accounts showed that the defendant would use these accounts to pretend that he was a friend of "jdbowman13," apologize for his own harassment and rudeness on the "jdbowman13" account, and try to get the same minor victims to send him more child pornography in exchange for money.

As a result of the defendant's actions, minor victims in the southern Maryland area and beyond have been irreparably harmed.  The risk of continuing harm should the defendant be released back into the same community in which his target demographic lives is great and cannot

be mitigated by any combination of conditions.  Further, the proposed third-party custodian and living arrangement is inappropriate for reasons explained herein.

## A.   INTRODUCTION

The Defendant was first arrested federally pursuant to a criminal complaint on July 15, 2026, which charged violations of 18 U.S.C. § 2251(a) and (e) (sexual exploitation of a child), 18 U.S.C. § 2242(b) (coercion and enticement of a minor) and 18 U.S.C. § 2252(a)(2) (receipt of child pornography).  He made his initial appearance on the criminal complaint that same day.

The government moved for the defendant's detention pending trial and the defendant did not consent.  A detention hearing was set for July 17, 2026.

## B.   PREVIOUS PROCEDURAL BACKGROUND

Prior to the filing of the federal criminal complaint, the defendant had initially been arrested on July 2, 2026 and brought before the District Court of Harford County after being charged with six counts of Sexual Solicitation of a Minor all relating to Minor Victim 1.  On July 6, 2026, a bail/bond review hearing was held where the judge agreed to release the defendant on home detention with a private company and imposed conditions that included a prohibition on contact with minors and no internet or device access.  This result immediately prompted an expedited filing of the federal criminal complaint due to the defendant's danger to the community if released.

## C.   FACTUAL BACKGROUND

### 1.  Risk to Minors in Proximity to the Defendant

The defendant starting from 2021 offered to purchase items such as "pods" for vape pens, cash, and other items of value in exchange for minors to send him child pornography.  The minors for whom he purchased "pods" necessarily were from the local area because he would agree to give the pods to the minors as payment in person on a specified day.

In addition, Minor Victim 1, Minor Victim 4, and another minor victim ("Local Minor 1") were all local girls that the defendant knew personally or knew of in and around Lusby, Maryland. Minor Victim 1 as previously mentioned knew the defendant from church. Minor Victim 4 had a boyfriend who was coworkers with the defendant at the fire station five minutes from his Lusby, Maryland home address. Local Minor 1 lived in Mechanicsville, Maryland, not half an hour from Lusby, Maryland, and gave the defendant her address. The defendant repeatedly asked Minor Victim 1 and Minor Victim 4 to meet up in person, and he agreed to meet up with Local Minor 1 in person on or about September 29, 2025. The defendant also has a history of finding local girls to target for his "deals," which is what he called his propositions of child pornography or sex acts in exchange for money. The defendant asked Local Minor 1 on August 30, 2025, "Do you know [first and last name of suspected local minor]?" In another exchange with yet another minor on Snapchat, the minor questioned how the defendant knew where she worked, and he replied that he had seen her around her workplace and complimented her appearance.

On October 29, 2025, the defendant asked Minor Victim 1 to "convince someone you may or may not know to hmu and maybe make deals and I'd pay you if they do." Then the defendant named [Local Minor 2]. When Minor Victim 1 questioned how the defendant knew [Local Minor 2], the defendant replied, "[w]e live in the same area (Lusby) / Can you try [Local Minor 2] tho? Like I'll pay you lol or her sister [Local Minor 3] / I just know we're in the same area cuz I've seen post in the community facebook page." Minor Victim 1 declined, stating, "Yeah no I'm not wanting to be involved you sounded like a stalker last night…" The defendant nevertheless continued to be fixated on [Local Minor 2], stating, "35 and you talk to [Local Minor 2]?" When [Local Minor 2] seemed unlikely to agree to a deal and the defendant discovered Minor Victim 1 may have naked pictures of [Local Minor 2], the defendant spent ten minutes repeatedly asking to

view the images, stating, "Come on…I'll send the extra lol / She won't know I saw it and I'll immediately delete it…/ What if I made you a really good offer? / If you send me that picture an anything else you have of her I'll send the extra and we can talk about more on my next paycheck… / $40 per for hers? / She won't find out I'll immediately delete them… / What would you want…I'll give you almost whatever can even send them on snap where you can delete them…"

[Local Minor 2] and [Local Minor 3] likely still live in the Lusby area and are at extreme risk should the defendant be released.  In particular, the defendant knew that [Local Minor 2] was involved in the local youth soccer team.

### 2.  Disregard of Victim Vulnerabilities and Boundaries

The defendant has also shown that he only cares about his own sexual gratification at the expense of his victims' wellbeing.  Rather than show generosity and care, the defendant treated these girls and their vulnerabilities as a means to an end.  In chats with Minor Victim 1, although the defendant claimed, "I do care about you either way tho," from August 25–27, 2025, the defendant refused to pay Minor Victim 1 as agreed and instead said "I thought I hit send" two days later.  Rather than pay her immediately, the defendant stalled for an hour and a half before falsely claiming "[w]on't let me log into my bank account says they are working to fix it." Meanwhile, Minor Victim 1 repeatedly pleaded with the defendant, "But can you send the money plz I really need it," "But can you hold up your end of the last deal before I agree to anything," "Ok but can you send the money now," "…send the cash from the last thing…," "Idk can we figure this out once you send the cash first," "No just send the money and we can find a place to meet," "Idc send the cash bro lol," and "But like stop side tracking plz pay me lol."  And when the defendant finally paid, he paid $75 short of what was agreed, falsely claiming that Minor Victim 1's request for $675 showed up as $600 on his end.

Later, in September 2025, Minor Victim 1 wished to stop taking and sending pictures of her body. She explained that it was not healthy for her because she was recovering from an eating disorder and "I'm trying to get better and if you supported me you would understand and still help me." But the defendant ignored Minor Victim 1 and continued to condition any financial help on getting what he wanted. Minor Victim 1 explained, "I have absolutely nothing. And like I'm close to getting in a whole shit tone of trouble and kicked out of college for not being able to pay." The defendant continued to ask, and Minor Victim 1 said, "I said I didn't want to and don't but if it's the only way I need it," explaining that she really needed money. The defendant said, "I mean unless you think of other ways or something / You know I'll take care of you." Minor Victim 1 responded, "Ik then take care of me your hurting me more by asking for things it hurts me / I can't trust you because you say you're gonna help me and support me and then you don't because you're not willing to unless I send you freaking nudes / And then the last time I sent them, it took you days to send me the money / And then you still didn't send all of it."

The defendant also knew Minor Victim 2 desperately wanted or needed money at times, as she sent him a series of messages: "please" / "i'm begging you" / "i promise" / "i'll do anything" / "i'll show u my tits rn" / "but I'm not sending anything else rn" "i'm sitting here" / "stranded." But the defendant saw an opportunity and asked, "can i get vagina or can we FaceTime" and then said, "😛 😛 😋 😋 and you send me good stuff I'll take care of you well on Wednesday." These messages were sent on September 17, 2022, a Saturday.

The defendant not only ignored victim vulnerabilities but also their boundaries; in particular, their desire to eventually be left alone. When Local Minor 1 no longer wished to interact with the defendant on Snapchat, he followed up just 15 minutes later with "Want

money."  Local Minor 1 said, "IM NOT FUCKING YOU OR DOING ANYTHING WITH YOU" and the defendant responded, "What about pics rn."  Local Minor 1 said, "no bro / leave me alone."  The defendant then messaged Local Minor 1 ten times in a row with no response from Local Minor 1 between November 20, 2025 and December 9, 2025.  And another five times from December 9, 2025 to December 10, 2025 without a response.

In another Snapchat exchange, the defendant messaged about 20 times from August 3, 2025 through November 11, 2025, with the last message saying, "Can you answer me I'll send money."

As mentioned previously, Minor Victim 1 was repeatedly harassed from November 2025 until at least April 1, 2026 from multiple of the defendant's Snapchat accounts and phone numbers.

3.  **The Defendant Cannot Be Trusted to Follow the Law or Instruction of the Court**

The defendant has been investigated before for the exact same conduct that he is now charged with by federal criminal complaint.  Yet the repercussions from the previous investigation, including the loss of his previous job, failed to deter him from continuing to engage in the same criminal conduct.  The defendant also has little regard for the law generally, as he expressed that he would use an ambulance he drove for work to come pick up Minor Victim 1 and that he would help Minor Victim 1 avoid getting caught by the police for speeding by giving her "[s]tickers [with fire department logos] to go on your truck and a t-shirt with those police don't fuck with it."  During surveillance conducted on the defendant, he was observed going 85-90 miles per hour.  The defendant also proposed ways for Minor Victim 1 to avoid her parents' tracking of her location by having her leave her phone home or, alternatively, "[g]o to your settings and turn your location services off it stays at you last location."

7

**D.      ANALYSIS OF 18 U.S.C. § 3142(g) FACTORS**

The totality of the circumstances weighs in favor of detaining the defendant. The defendant is charged with sexual exploitation of a child, so that there is a presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(E). This provision also requires the judicial officer to find that there is probable cause to believe that the Defendant committed the enumerated offenses. 18 U.S.C. § 3142(e)(3). When seeking detention based on community safety, the Government's burden is clear and convincing evidence. *United States v. Anderson*, 2020 WL 1929440 at *2 (D. Md. Apr. 20, 2020). In a presumption case where evidence is offered by the defendant to counter the presumption, the presumption "does not fall out of the picture entirely but rather remains a factor in the court's totality of the circumstances analysis." *Id.* at *6. When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White,* 2015 2015 U.S. Dist. LEXIS 64110* (D. Md. May 15, 2015).

*Nature and Circumstances of the Offenses Charged:*

The defendant's actions were intentional and focused on the sole goal of obtaining child pornography or sexual acts from minors. Not only was the defendant determined to obtain what he wanted by any means necessary, he also continued to do so after being investigated by Calvert County and losing his previous job as a result of his actions. The minor victims experienced the defendant's persistent harassment for sexual images and sexual acts in exchange for money, effectively reducing their value to just their bodies. The damage the defendant inflicted on teenagers is severe and, for at least three Minor Victims, traumatic enough that they independently reported his conduct to multiple law enforcement authorities.

The nature and circumstances of the offenses charged here are serious and weigh heavily in favor of detention.

*Weight of the Evidence Against the Person:*

The weight of the evidence here weighs in favor of detention. Through the defendant's messages alone, there is sufficient evidence to support the charges. The attribution evidence clearly identifies the defendant as the person sending the messages on multiple social media accounts and his phone. The defendant's financial records further corroborate the payments that the defendant made to the minor victims.

*History and Characteristics of the Person:*

The defendant here has no criminal history, but that alone does not distinguish him among others who commit similar crimes. What does distinguish this defendant, however, is the brazen continuation of his crimes immediately after and potentially during an investigation into his exploitation of Minor Victim 4. Minor Victim 4 made a report in August 2022 and Snapchat records show that the defendant was chatting with Minor Victim 2 in August and September 2022. The defendant is also distinguishable because he continued to harass his victims after they ceased contact with him, including by using other "anonymous" accounts. This behavior, coupled with his sexual prowling for teenagers online and in person is troubling and heightens the danger that the defendant poses to the community.

In addition, the defendant has shown some evidence of dishonesty during his pretrial interview. As mentioned above, the defendant was never surveilled in the Lusby house that is the proposed location to which he would return; instead, the defendant spent most of his time living in the Bel-Air fire station. As he has been employed in the same position for three and a half years, at a location over two hours from Lusby, Maryland, it is likely that the defendant has lived at the fire station since he began work there in approximately early 2023. The defendant also seemed to have overstated his expenses, as his mother said that she covered the mortgage

payments and grocery expenses, which total about $2200, leaving $3,620 per month in cash flow, not $1,420.

*Nature and Seriousness of the Danger to Any Person or the Community:*

This factor strongly favors detention.  The danger to the community posed by this defendant is great.  The defendant is a local to Lusby and has used both his position of trust in a local church and his knowledge of the area to further his criminal conduct.  Returning the defendant to the same area where his criminal conduct began and in the same home where he lived when it began while there are still local girls who were targeted by the defendant living in the area is incredibly dangerous.

The proposed third-party custodian is the defendant's mother.  The pretrial report reflects that Ms. Bowman was interviewed.  Of concern is the following: (1) although the defendant said that his mother's boyfriend, Francis Adams, lived in the house, Ms. Bowman called him her "caretaker"; (2) although the defendant stated that Timothy Polk is his mother's friend, she called him her "tenant"; (3) Ms. Bowman reported that she had no criminal record and was unaware of any record for either Mr. Adams or Mr. Polk; (4) Ms. Bowman said that the defendant was "in between" jobs for a while prior to his current employment; (5) Ms. Bowman believes that while the defendant is 31, his mental age is closer to that of a teenager.  She stated if one were to see his room or observe the tv shows he watched; they would believe him to be a teenager.

The government is concerned about points (1)–(3) because they evince Ms. Bowman's attempt to distance herself from the other occupants in the house.  During the pretrial investigation and through the government's own records search, it was revealed that in fact Ms. Bowman as well as the other occupants apparently have criminal records.  Mr. Adams, in

addition to the charges found during the pretrial investigation, also is believed to have a manslaughter charge on his record. The fact that the pretrial investigation revealed that Mr. Adams had a case where the defendant was a victim of an assault by Mr. Adams in December 2025 shows how unlikely it is for Ms. Bowman to be unaware of Mr. Adams's criminal record.

Regarding Ms. Bowman's characterization of the defendant's unemployment, it seems that she either omitted the reason why the defendant was unemployed for a time or was unaware that the defendant was previously investigated for the same criminal conduct.

And, finally, Ms. Bowman's statement about her belief that the defendant is mentally a teenager is the most troubling of all. A third-party custodian cannot excuse a defendant's behavior and serves as the Court's trusted eyes and ears. This person is required to put their duty to the Court above their feelings toward the defendant and, if necessary, to report any violations of conditions to the Court. Ms. Bowman's statement shows that she is not mentally able to serve in this role. Believing that the defendant is still a child shows that Ms. Bowman may excuse or normalize behavior due to perceived immaturity rather than hold the defendant fully accountable as the adult he is.

There are no conditions or combination of conditions that can reasonably assure the safety of the community from this defendant.

**F.    CONCLUSION**

For the reasons stated above, and for any other presented at the detention hearing, there is no condition or combination of conditions that would reasonably assure the safety of the community, and Jurel Bowman should be detained pending trial.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

Digitally signed by VICTORIA LIU
Date: 2026.07.17 09:51:20 -04'00'

Victoria Liu
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Digitally signed by VICTORIA LIU
Date: 2026.07.17 09:51:42 -04'00'

Victoria Liu
Assistant United States Attorney